IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPHINA LOPEZ,                      )
                                      )
              Plaintiff,              )
                                      )
    v.                                )    No. 06 C 4836
                                      )
THOMAS DART, in his official          )
capacity as Cook County               )
Sheriff, ANTHONY KOZLAR, and          )
ERIK MACKOWIAK,                       )
                                      )
              Defendants.             )

## OPINION AND ORDER

Plaintiff Josephina Lopez alleges that she was illegally
seized and subjected to excessive force when Cook County Sheriff
deputies were attempting to evict her from her apartment.
Federal claims of illegal seizure, excessive force, and unlawful
search and failing to prevent the same are brought against
defendants Anthony Kozlar and Erik Mackowiak.[1] At least two
other deputy sheriffs were also involved in the incident, but are

---

[1]The First Amended Complaint is not artfully drafted. It
appears that all the claims against the individual defendants are
intended to be federal constitutional claims. It is expressly
stated that the claim against the Sheriff is based only on state
law. Am. Compl. ¶ 4.

not named as defendants. A state law battery claim is brought against the Sheriff in his official capacity[2] based on respondeat superior liability for the conduct of the deputies. Cook County is named as a defendant based on indemnity for the possible liability of the other defendants. See Carver v. Sheriff of LaSalle County, Ill., 324 F.3d 947, 948 (7th Cir. 2003). Presently pending is defendants' motion for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Hicks v. Midwest Transit, Inc., 500 F.3d 647, 651 (7th Cir. 2007); Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof

_____

[2]The First Amended Complaint names Michael Sheahan. The current Sheriff, Thomas Dart, will be substituted for Sheahan. See Fed. R. Civ. P. 25(d).

- 2 -

at trial. _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986); _Hicks_, 500 F.3d at 651; _Jumer_, 472 F.3d at 946. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. _Celotex_, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. _See_ _Lorillard Tobacco Co. v. A & E Oil, Inc._, 503 F.3d 588, 594-95 (7th Cir. 2007); _Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago_, 357 F.3d 677, 679 (7th Cir. 2004); _NLFC, Inc. v. Devcom Mid-America, Inc._, 45 F.3d 231, 236 (7th Cir. 1995); _Covalt v. Carey Canada, Inc._, 950 F.2d 481, 485 (7th Cir. 1991); _Collins v. Associated Pathologists, Ltd._, 844 F.2d 473, 476-77 (7th Cir. 1988); _Freundt v. Allied Tube & Conduit Corp._, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." _Logan v. Commercial Union Ins. Co._, 96 F.3d 971, 978 (7th Cir. 1996) (citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to

the district court--that there is an absence of
evidence to support the nonmoving party's case."
Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once
the moving party satisfies this burden, the
nonmovant must "set forth specific facts showing
that there is a genuine issue for trial." Fed.
R. Civ. P. 56(e). "The nonmovant must do
more, however, than demonstrate some factual
disagreement between the parties; the issue
must be 'material.'" Logan, 96 F.3d at 978.
"Irrelevant or unnecessary facts do not preclude
summary judgment even when they are in dispute."
Id. (citation omitted). In determining whether
the nonmovant has identified a "material" issue
of fact for trial, we are guided by the
applicable substantive law; "[o]nly disputes that
could affect the outcome of the suit under
governing law will properly preclude the entry of
summary judgment." McGinn v. Burlington Northern
R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
(citation omitted). Furthermore, a factual
dispute is "genuine" for summary judgment
purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return
a verdict for that party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
doubt" regarding the existence of a genuine fact
issue is not enough to stave off summary
judgment, and "the nonmovant fails to demonstrate
a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of
fact to find for the non-moving party . . . .'"
Logan, 96 F.3d at 978 (quoting Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
(1986)).

Outlaw, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all

reasonable inferences in favor of plaintiff, the facts assumed to

be true for purposes of summary judgment are as follows.[3] The incident at issue occurred on October 7, 2005. On that date, deputy sheriffs Kozlar, Mackowiak, Andrew Wise, and Harry Vance[4] were attempting to enforce an order of possession at plaintiff's residence, which was the second floor apartment of a three-flat located in Chicago. At the time, two Jehovah Witnesses were visiting with plaintiff and her grandson was also present. Plaintiff was 70 years old and nearly blind. Shortly after the officers arrived, plaintiff made statements indicating that her son was evicting her and made complaints to the effect: Why is my son doing this to me?[5]

---

[3]The only evidence presented on summary judgment is plaintiff's deposition, affidavits of the individual defendants, and the order of possession from the eviction case.

[4]Plaintiff testified that at least five officers were present.

[5]Defendants present facts regarding the prior history leading up to the eviction. The only background information that can be pertinent to the officers' seizure of plaintiff and use of force would be information that they were already aware of at the time they were seizing plaintiff and using force. See Graham v. Connor, 490 U.S. 386, 397 (1989); Muhammed v. City of Chicago, 316 F.3d 680, 683 (7th Cir. 2002); Williams v. Cano, 2008 U.S. Dist. LEXIS 32510 *11-12 (N.D. Ill. March 27, 2008). Defendants do not point to evidence that the deputies were aware of the prior history other than through limited statements that plaintiff does not dispute she made during the incident. Plaintiff requests that irrelevant portions of defendants' fact statement, all of which she broadly categorizes as scandalous, be stricken from the record. It is unnecessary to strike any facts. It is sufficient that non-material facts are not used as a basis for granting summary judgment.

When the officers arrived at the building, the front entry to the building was locked. A middle-aged Hispanic male-- likely plaintiff's son--opened the front entry for the officers.[6] From inside her apartment, plaintiff heard the officers shouting, "Police, Police" and marching up the stairs "like soldiers." The officers used a tool to force open the apartment door. Plaintiff testified that it was something like a ramming device.

When the officers came through the door, plaintiff was sitting on her couch between the two visitors and her grandson was in the back room. Two officers approached plaintiff while two others searched other areas of the apartment. Because of her limited eyesight and/or lack of recall, plaintiff cannot identify which officers did what. Kozlar's and Mackowiak's statements that they were the two officers initially searching other areas must be accepted as true. Plaintiff immediately asked to telephone her lawyer or daughters, but the officers would not let her. She continued to make such a request throughout the approximately 15 minutes it took to get her out of the apartment,

[6]Plaintiff contends the officers broke through this door. However, the only evidence cited is plaintiff's testimony that the door was locked. There is no evidence that anyone in the apartment heard splintering wood or any other noise consistent with a forced entry. Since there is no sufficient evidence to the contrary, defendants' statements that a man let them in the entry door must be accepted as true.

including in the presence of Kozlar and Mackowiak.[7] Shortly after the officers arrived, two officers other than the defendants told plaintiff to get up and searched under the couch cushions. The officers then told plaintiff she was under arrest and pulled her arms back to handcuff her. Plaintiff had some pain from having her arms pulled and heard a cracking sound. She told the officers that the handcuffs were too heavy and the officers noticed her hands were turning colors. The initial pain from being handcuffed was not severe, but plaintiff felt very sore the next day. Plaintiff's hand started to go numb from being handcuffed. When plaintiff asked for her blood pressure medicine, an officer threw one of her bags of medicine at her. The grandson tried to get medicine out of the bag, but the blood pressure medicine was not in there.

On defendants' motion for summary judgment, plaintiff's testimony must be taken as true, not the contrary affidavits of defendants. Plaintiff testified that she was calm and cooperative throughout the incident. She did not offer any physical resistance nor insist that she would not leave. She left the apartment after the handcuffs were removed.

---

[7]Plaintiff's testimony is unclear as to which events all the officers would have witnessed. Consistent with her testimony, though, it could be found that Kozlar and Mackowiak saw everything that happened in the living room except for minutes when they were in other rooms.

The parties agree that plaintiff's excessive force

> claim, because it arises in the context of a
> seizure of a free citizen, is governed by the
> Fourth Amendment's reasonableness standard.
> Graham v. Connor, 490 U.S. 386, 394-95, 109
> S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); see
> also Brosseau v. Haugen, 543 U.S. 194, 197, 125
> S. Ct. 596, 598, 160 L. Ed. 2d 583 (2004) (per
> curiam). The force employed by a police officer
> is deemed excessive if, in light of the totality
> of the circumstances, it was greater than was
> reasonably necessary to effectuate the seizure.
> Payne v. Pauley, 337 F.3d [767,] 778 [(7th Cir.
> 2003)] (quoting Lester v. City of Chicago,
> 830 F.2d 706, 713 (7th Cir. 1987)). To assess
> the degree of force that was justified, a court
> considers the severity of the crime for which the
> plaintiff was being detained or arrested, whether
> he posed a threat to the safety of the officers
> or to other persons, and whether the plaintiff
> was resisting the officers and/or attempting to
> flee. Graham, 490 U.S. at 396, 109 S. Ct.
> at 1872. We examine the facts as they would have
> appeared to a reasonable officer on the scene,
> ibid., keeping in mind that an officer often must
> make a split-second judgment based on rapidly
> evolving circumstances, id. at 396-97, 109 S. Ct.
> at 1872; Abdullahi v. City of Madison, 423 F.3d
> 763, 768 (7th Cir. 2005); Lawrence v. Kenosha
> County, 391 F.3d 837, 843 (7th Cir. 2004).

Holmes v. Village of Hoffman Estate, 511 F.3d 673, 685 (7th Cir.

2007). The inquiry is an objective one based on all the facts

and circumstances the officer would have been aware of at the

time the force was employed, and without regard to the officer's

intent or motivation. Graham, 490 U.S. at 397; Muhammed v. City

of Chicago, 316 F.3d 680, 683 (7th Cir. 2002); Palmquist v.

Selvik, 111 F.3d 1332, 1339-40 (7th Cir. 1997) (quoting

Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988)); Tidwell v. Tenevuque, 2002 WL 252601 *2 (N.D. Ill. Feb. 21, 2002); Munley v. Carlson, 125 F. Supp. 2d 1117, 1119-20 (N.D. Ill. 2000).

"[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." Chelios v. Heavener, 520 F.3d 678, 691-92 (7th Cir. 2008) (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996)); Payne, 337 F.3d at 780 (same). Where a citizen is cooperating, not resisting, and objectively represents no significant threat, uses of force that do not cause permanent injury can still be excessive. See Chelios, 520 F.3d at 689-90; Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir. 2003); Payne, 337 F.3d at 779-80.

Even if the force defendant used is determined to be excessive, the individual defendants contend they are entitled to qualified immunity. As of October 2005, it was clearly established a police officer may not use excessive force in effecting a seizure. Holmes, 511 F.3d at 687. Defendants, though, would still be entitled to qualified immunity unless (a) there is a closely analogous case establishing plaintiff's right to be free from the type of force used or (b) the force used was so plainly excessive that, as an objective matter, defendants would have been on notice that using such force would

violate the Constitution. Chelios, 520 F.3d at 692 (quoting Clash, 77 F.3d at 1048). "Establishing that the use of force in a particular case was 'so plainly excessive' requires a fair amount of factual development. Thus, 'if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made.'" Id.

On defendants' summary judgment motion, it must be taken as true that plaintiff was being cooperative and offering no resistance. She was being evicted from her residence, not being accused of committing any crime. The facts taken as true for purposes of summary judgment do not support that plaintiff--70 years old, nearly blind, and seated on her couch--represented any threat to the officers. The facts taken as true for purposes of summary judgment do not justify using any force whatsoever on plaintiff. In this circumstance, using even minimal force that causes some pain is excessive, even if it causes no permanent injury. As of October 2005, it was clearly established that the use of such force in this circumstance violates the Constitution. See Payne, 337 F.3d at 779-80; Chelios, 520 F.3d at 691-92; Carlson v. Bukovic, 2008 WL 2397682 *13 (N.D. Ill. June 9, 2008); Williams, 2008 U.S. Dist. LEXIS 32510 at *16-17.

Although Kozlar and Mackowiak were not the ones who placed the handcuffs on plaintiff, it can be reasonably inferred that they were aware of her being handcuffed and did nothing to prevent it. It is also well established that a law enforcement officer, who knows excessive force is being used by another officer, must act to prevent the use of such force if there is a realistic opportunity to intervene to prevent harm. Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). The evidence supports that defendants had a reasonable opportunity to avoid handcuffs or to have the handcuffs removed sooner. The claim that the individual defendants failed to prevent the use of excessive force will not be dismissed.

As to the illegal seizure claim, Kozlar and Mackowiak do not dispute that plaintiff was seized, but contend they cannot be liable for that seizure because they were in another room when one of the other officers seized plaintiff. But even if the individual defendants were not present at the moment plaintiff was handcuffed, they were aware of plaintiff being seized prior to her release and did not act to have the other officers uncuff plaintiff. It has been clearly established that such a failure to intervene would violate the Constitution. See Yang, 37 F.3d at 285.

In their opening brief, defendants raised no argument regarding the unlawful search claim. Since not raised in defendants' opening brief, plaintiff had no obligation to address that claim in her response and did not. In their reply, defendants argue for the first time that the unlawful search claim should be dismissed. Since raised for the first time in their reply, dismissal of the search claim will not be considered. See Doucette v. Minocqua Hazelhurst, Lake Tomahawk Joint Sch. Dist. No. 1, 2008 WL 2412988 *5 (W.D. Wis. June 12, 2008); Kelly v. Enbridge (U.S.) Inc., 2008 WL 2123755 *8 n.3 (C.D. Ill. May 16, 2008).

In a three-sentence footnote at the end of defendants' opening brief, Def. Memo. at 16 n.1, defendant Dart asserts--citing provisions of Illinois's Local Governmental and Governmental Employees Tort Immunity Act, but no case law--that the battery claim against him should be dismissed because plaintiff fails to establish that Kozlar's and Mackowiak's physical contact with plaintiff rose to the level of willful or wanton conduct. See 745 ILCS 10/2-202. Plaintiff responds that this contention should be ignored because not supported by a sufficient argument. Plaintiff also responds that Dart ignores that his liability can be based on the conduct of all the officers--it is not limited to the conduct of the two named

- 12 -

defendants. In his reply brief, Def. Reply at 4, Dart makes no argument based on the Illinois Tort Immunity Act, instead contending for the first time that 42 U.S.C. § 1983 does not provide for respondeat superior liability so the claim against Dart should be dismissed because plaintiff does not establish a policy or custom as would be required for municipal liability on a § 1983 claim. See Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002). In his reply, Dart does not address the question of whether the conduct of the non-defendant officers was willful and wanton.

Plaintiff expressly states in ¶ 4 of her First Amended Complaint that her claim against the Sheriff is a state law claim only. She does not allege that the Sheriff is liable on the federal claims. Also, it is expressly stated that the claim against the Sheriff is in his official capacity only, not in his individual capacity. Thus, it is a claim against a public entity, the Sheriff of Cook County. The policy or custom requirement for municipal liability applies to a § 1983 claim. There is no such requirement for a state law claim against a municipality. Under the Tort Immunity Act, a public entity has respondeat superior liability for acts for which one of its employees would be liable except to the extent it or the employee is immunized by one of the provisions of the Tort Immunity Act.

- 13 -

See 745 ILCS 10/1-101.1, 2-101, 2-109, 2-111; Torres v. City of Chicago, 123 F. Supp. 2d 1130, 1133 n.3 (N.D. Ill. 2000).[8] As to her state law battery claim, plaintiff may proceed against the Sheriff based on respondeat superior liability.

To the extent Dart has not abandoned or failed to adequately support the willful and wanton argument asserted in the opening brief, that contention is also rejected. When handcuffs are reasonably applied, incidental shoving or the handcuffs being too tight for a short period of time ordinarily will not reach the level of a willful and wanton battery. See Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001); Guidry v. Boyd, 2007 WL 2317174 *15 (N.D. Ill. July 17, 2007). Here, however, the handcuffs were unreasonably applied in a situation that did not justify the use of any force whatsoever. When the use of force rises to the level of being unconstitutional excessive force, generally it will also

---

[8]In defendants' opening brief, Dart cites 745 ILCS 10/2-204. That provision protects employees of public entities from being individually liable on a vicarious basis for the conduct of other employees. Section 2-204 does not apply to a public entity's liability for the conduct of one of its employees who is subject to liability. Thomas ex rel. Smith v. Cook County Sheriff, 401 F. Supp. 2d 867, 875 (N.D. Ill. 2005). See also Barton v. Randolph County, 2007 WL 141919 *4 (S.D. Ill. Jan. 17, 2007).

constitute willful and wanton conduct. See Welsch v. Bernardi,
2006 WL 2224070 *5 (C.D. Ill. Aug. 2, 2006).

In the present situation, it can be inferred that the
officers applying and allowing the use of the handcuffs acted
willfully and wantonly.

> The Illinois courts have held that a police
> officer is not guilty of willful or wanton
> conduct unless he acted with "actual or
> deliberate intention to harm or with an utter
> indifference to or conscious disregard for the
> safety of others." Breck v. Cortez, 141 Ill.
> App. 3d 351, 490 N.E.2d 88, 94 (1986); see also
> Carter v. Chi. Police Officers, 165 F.3d 1071,
> 1080-81 (7th Cir. 1998). Although willful and
> wanton conduct "consists of more than mere
> inadvertence, incompetence, or unskillfulness,"
> it need not be an "intentional act; rather, it
> may be an act committed under circumstances
> exhibiting a reckless disregard for the safety of
> others." Carter, 165 F.3d at 1071. Whether an
> officer acted in such fashion "is normally a
> question of fact to be determined by the jury."
> Stamat v. Merry, 78 Ill. App. 3d 445, 397 N.E.2d
> 141, 145 (1979).

Chelios, 520 F.3d at 693. Here, the facts assumed to be
true, are that one or more of the officers roughly handcuffed
a 70-year-old, nearly blind woman who was on a number of
medications, including blood pressure medicine despite the fact
that she was cooperating and there was no reason to handcuff her
or use any force whatsoever. Under those circumstances, reckless
disregard for plaintiff's safety can be inferred. The battery
claim against Dart will not be dismissed.

No claims are being dismissed, but the illegal seizure and excessive force claims are limited to being based on defendants Kozlar's and Mackowiak's failure to intervene. Within one week, plaintiff shall serve a demand for settlement upon defendants. Prior to the next status hearing, the parties shall attempt to settle this case. If they do not settle, they shall discuss the possibility of consenting to a trial before the assigned magistrate judge, who may have more flexibility in scheduling the trial and may waive some aspects of the final pretrial order. At the status hearing, if the parties have not settled or consented to a trial before the magistrate judge, a short date will be set for submission of a complete final pretrial order, including trial briefs, jury instructions, and motions in limine.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to amend the docket to reflect that Thomas Dart, in his official capacity as the Sheriff of Cook County, Illinois, is substituted in for defendant Michael Sheahan. Defendants' motion for summary judgment [51] is granted in part and denied in part. No claims are dismissed, but the illegal seizure and excessive force claims against the individual defendants are limited to being based on the individual defendants' failure to prevent such

violations.  A status hearing will be held on August 20, 2008

at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:    JULY  17  , 2008